## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL DANTONE, *on behalf of himself and all others similarly situated,*<br><br>     Plaintiff,<br>v.<br><br>KING'S COLLEGE,<br><br>     Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michael Dantone ("Plaintiff"), by and through his undersigned counsel, brings this Class Action Complaint against Defendant, King's College ("King" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

### NATURE OF THE ACTION

1.     Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2.     Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational

product with access to a varied suite of services, activities, facilities, and experiences through an on-campus, in-person educational experience.

3.    King offers students the option to pick either: (1) online classes, or (2) an on-campus, in-person educational experience in Wikes-Barre, Pennsylvania.

4.    Plaintiff, an undergraduate student during the Spring 2020 semester, chose and paid tuition and fees to enroll in King's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the semester.

5.    Plaintiff's paid-for experience was cut short mid-way through the Spring of 2020, when that in-person educational experience was taken away from Plaintiff and other students at King.

6.    In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), King, like many other colleges and universities, transitioned to remote online-only education, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7.    As a result, all on-campus education, services, and amenities were no longer available to King students for the remainder of the Spring 2020 semester.

8.    Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, King refused to provide a prorated refund of

tuition or fees tied to on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester. Indeed, upon transitioning to online-only education in March 2020, King only prorated room and/or board charges for residential students for the Spring 2020 Semester.

9.      Accordingly, King's students lost the benefits of the bargain for services and the experience they paid for but could no longer access or use following the school's transition to remote learning in March 2020.

10.     By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, King breached its contracts with students or was otherwise unjustly enriched.

11.     It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12.     It is unfair and unlawful for King to retain tuition and fees for campus-based in-person education and services not being provided and to pass the financial losses on to the students.

13.     Importantly, Plaintiff does not challenge King's discretion in adhering to federal, state, and local health guidelines, but rather challenges King's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person

education, experiences, access to campus, and services, without providing such.

14.     Plaintiff brings this class action for damages and restitution resulting from King's retention of the tuition and fees paid by Plaintiff and the other putative Class members for in-person education and services that were contracted for but were not provided. Specifically, this lawsuit seeks disgorgement of the pro-rated, unused amounts of the fees that Plaintiff and other putative Class members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefit, as well as a partial prorated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## **PARTIES**

15.     Plaintiff Dantone, is an adult, who at all relevant times, is and was a resident and citizen of the Commonwealth of Pennsylvania. He paid tuition and fees for the Spring 2020 semester. Halfway through the Spring 2020 semester, Plaintiff was forced to take his classes remotely, retrain from visiting campus, and prevented from utilizing various on-campus services for which he paid.

16.     Plaintiff Dantone was an undergraduate student enrolled at King for the Spring 2020 semester, which was scheduled to run from January 13, 2020 through May 8, 2020. Plaintiff did not have access to campus after March 11, 2020, because the campus was closed due to the COVID-19 pandemic. Plaintiff paid tuition and

fees for the Spring 2020 semester, the benefits of which he lost because King closed the campus and cut off access to on-campus services, facilities, and extracurricular activities.

17.     Defendant, King's College, is a private liberal arts college founded in 1946. King offers numerous major fields for undergraduate students, as well as a number of graduate programs. Defendant's undergraduate includes students from many of the states in the country, including primarily from the Mid-Atlantic and New England regions. Its principal campus is located in Wilkes-Barre, Pennsylvania. Defendant is a citizen of Pennsylvania.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19.     This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, because Defendant conducts substantial business by operating its principal campus in this District, and solicits students residing in this District to attend its institution.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this district.

## FACTUAL ALLEGATIONS

21.     King is a four-year residential and commuter liberal arts college. King requires all first-year students and sophomore undergraduate students (who do not commute to campus) to live on campus and permits juniors and seniors to live off campus so long as they meet certain academic requirements and submit an off-campus form.[1]

22.     Since its founding in 1946, King has offered its educational programs on-campus and in-person. And like many traditionally residential colleges and universities across the United States, for the 2019-2020 school year, King offered the vast majority of its educational programs on-campus and in-person.

23.     Indeed, a review of King's online course catalogue demonstrates that while students may search for classes that have physical locations on campus, some are offered as an online course, or a mix of online and on-campus, King offers nearly all its class offerings exclusively at a physical location on-campus and in-person.

---

[1] https://www.kings.edu/life_at_kings/campus_living/off_campus#:~:text=Residency%20Policy%3A,to%20live %20in%20College%20housing.

24.    As such, every undergraduate student at King, prior to enrolling in classes, is presented with the option of registering for on-campus and in-person classes or a very limited number of online classes.

25.    To enroll in classes, King requires students to pay tuition and some form of mandatory fees. The Spring 2020 semester at King began on or about January 13, 2020. The Spring 2020 semester ended on or around May 8, 2020.

26.    Tuition at King for in-person education for the Spring 2020 Semester was $18,387 for full-time undergraduate students. Additionally, King charged a General College Fee of $975 and a $196 Wellness Fee to undergraduate students for the Spring 2020 along with other fees, ranging from $160 to $190 per course, for laboratory courses in biology, chemistry, communications, photography, physics, and sports medicine (collectively, the "Mandatory Fee").

27.    Upon information and belief, all full-time undergraduate students must pay the General College Fee which is used by King to cover the costs of student activities, fitness facilities, and other campus services and activities.

28.    All undergraduate resident students must pay the Wellness Fee which is used by King to cover the costs for the Student Health Center services, including medical care and medications dispensed by a King's healthcare provider, all diagnostic procedures and tests performed, and other campus services.[2]

---

[2] https://www.kings.edu/life_at_kings/resources_for_success/health_center/fees

29.    King uses its marketing materials, course catalogue, and other bulletins to solicit students for its on-campus programs.

30.    For example, King's website describes the benefits of its on-campus educational experience with faculty and other students. Specifically, the website highlight's King's small classes sizes, informing students that "[c]lasses average 18 students, which fosters a dynamic, personal setting for you to interact with your professors and classmates, to succeed academically, socially and spiritually. King's College is your school, for life."[3]

31.    Likewise, King's 2019-2020 Course Catalog highlights its low student/faculty ratio, advertising that "King's is preeminently a learning community in which students and teachers are associated in a personalized process of intellectual, moral, and social growth. The College provides a challenging, but individually supportive, environment for full personal growth."[4]

32.    King's website further highlight's its on-campus community and describes the benefits of attending King in-person:

> "[c]ommunity is important at King's College because we believe your success depends upon an environment that's as nurturing as it is enriching."[5] Indeed, King's website informs potential students that "[t]he minute you step foot on campus, you'll feel the warm, friendly vibe; you'll notice the immaculate surroundings and impressive facilities; you'll feel at home in the comfortable, urban setting. King's

---

[3] https://www.kings.edu/aboutkings
[4] https://www.kings.edu/sites/default/files/Catalog2019-2020.pdf, at 8
[5] https://www.kings.edu/

College is a home away from home—a place that overflows with values for a lifetime."[6]

33.    King also uses its websites to highlight the benefits of attending a school with a campus location in Northeast Pennsylvania—"[o]ur campus is near the downtown area along the beautiful Susquehanna River. We've got malls, theatres, coffeehouses and restaurants minutes away. Local venues offer concerts, Triple A baseball, minor league hockey and arena football."[7]

34.    Similarly, the Course Catalogue explains the benefits of being located in residential Wikes-Barre, Pennsylvania:

> [T]he location of the College has its complementary contrasts. The campus, located in a downtown residential section of the historic city of Wilkes-Barre, Pennsylvania and adjacent to a scenic park along the banks of the Susquehanna River, has all the advantages and few disadvantages of an urban campus. Wilkes-Barre has been the site of a remarkable redevelopment thrust in recent years, and King's students take great delight and pride in the expanded cultural and entertainment opportunities that now exist.[8]

35.    In its 2019-2020 Course Catalog, King also marketed its on-campus experience as a benefit of enrollment, including:

   a.    King marketed itself as a learning community that offered students a personalized process of intellectual, moral and social growth.

   b.    King differentiated its support services from competitors, advertising that unlike other colleges whose services

---

[6] https://www.kings.edu/aboutkings
[7] https://www.kings.edu/aboutkings/justthefacts/surrounding_community
[8] https://www.kings.edu/sites/default/files/Catalog2019-2020.pdf, at 9.

complement the faculty's needs, "those at King's are designed primarily to meet the individual student's needs."

c.   King alerted students that participation in class was essential to the learning process.

d.   King emphasized the importance of its academic support services, including tutoring programs and writing support.[9]

36.   Plaintiff and the members of the Class paid tuition for the benefit of on-campus and in-person educational experience throughout the entire Spring 2020 semester.

37.   When enrolling in classes for Spring 2020, Plaintiff and members of the Class chose to enroll in classes offered in-person, to obtain the benefits outlined above.

38.   Plaintiff and the members of the Class paid the Mandatory Fee for the Spring 2020 semester so they could benefit from on-campus services and facilities offered by King to its students.

39.   Despite Plaintiff and Class members paying the Spring 2020 semester tuition and Mandatory Fee to attend King for an in-person and on-campus educational experience, King failed to provide the promised in-person educational experience for the duration of the entire semester, instead providing online instruction for approximately 50% percent of the Spring 2020 semester.

---

[9] *See generally*, https://www.kings.edu/sites/default/files/Catalog2019-2020.pdf.

40.     King has not provided any refund of any tuition or Mandatory Fee and continues to retain the monies paid by Plaintiff and the Class.

### *In Response to COVID-19, King Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes*

41.     On March 11, 2020, King announced the decision to suspend in-person classes immediately, and resume classes through distance learning on March 19.[10] At that time, King announced that distance learning would continue at least through the end of Easter break on April 13.[11]

42.     On March 11, 2020, King also required all resident students to leave campus by March 14 at 3:00 PM and return home.[12] Students who faced extraordinary circumstances and could not leave campus were allowed to stay, receiving access only to their residence hall and the first floor of the campus center.[13]

43.     On March 12, 2020, King suspended athletic competitions and limited access to the student recreation center.[14] On March 17, 2020, King closed the student recreation center "until further notice."[15]

44.     On March 20, 2020, King announced that all buildings on campus were closed.[16] These buildings including the library, Counseling Center, Residence Life

---

[10] https://web.archive.org/web/20200427125844/https://www.kings.edu/mykings/covid-19-information
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

Office, Shoval Center, Campus Ministry Office, Academic Skills Office, Achievement Plus Office, and the Office of the AVP for Academic Success.[17]

45.     On March 24, 2020, King announced the decision to cancel in-person classes for the remainder of the Spring semester, extending online education indefinitely.[18]

46.     On April 6, 2020, King postponed commencement for the Spring 2020 graduating class until August 2020.[19]

47.     King did not hold any in-person classes for undergraduate students between March 11, 2020 and the end of the Spring 2020 term. All Spring 2020 classes after March 11, 2020 were only offered in a remote online format with no in-person instruction or interaction.

48.     Most of the services for which the Mandatory Fee was assessed were also terminated or cancelled at or about this time, such as access to King's health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

49.     Although King provided pro-rated refunds for residence hall rooms and student meal plans, King refused to adjust its tuition policies, including its policies governing tuition and/or the Mandatory Fees. Under those policies, the shift to

---

[17] *Id.*
[18] *Id.*
[19] *Id.*

exclusive remote online instruction occurred after King's February 28, 2020 deadline for students to receive *any* tuition refund for Spring 2020 enrollment despite King's unilateral decision to cancel in-person classes after that date. [20]

### *Students Experienced Significant Losses, in Many Cases of Borrowed Funds as a Result of King's Conduct*

50.    At King, the median federal loan debt among borrowers who completed their undergraduate degree is $27,000.[21] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from King is $270.[22]

51.    In addition, 39% of students graduating from King took out private loans. King students with private loans have an average of $51,505 in private loan debt at graduation.[23]

52.    With the campus shut down for 50% of the semester, Plaintiff and the proposed Class members were deprived of the benefits of the on-campus experience as set forth above. Nevertheless, King has refused to refund any portion of the tuition or the Mandatory Fee, despite not providing the on-campus in-person educational experience for which they paid.

---

[20] https://www.kings.edu/sites/default/files/Catalog2019-2020.pdf, at 45
[21] https://www.usnews.com/best-colleges/kings-college-pennsylvania-3282/paying
[22] *Id.*
[23] Id.

53.    Students attending King's Spring 2020 semester did not choose to attend an online institution of higher learning, but instead chose to enroll in King's in-person and on-campus educational program.

54.    During the online portion of the Spring 2020 semester, King principally used programs by which previously recorded lectures were posted online for students to view on their own, or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students and among students that is instrumental to a personalized process of intellectual, moral, and social growth.

55.    The online formats used by King did not require memorization or the development of strong study skills given the absence of essential student participation in class and the ability to consult books and other materials when taking exams.

56.    Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

57.    Access to facilities such as libraries, laboratories, computer labs, and study rooms, integral to a college education, and access to the myriad activities offered by campus life that foster social development, independence, and networking for future careers, are all substantial and materials parts of the basis upon which King can charge the tuition it charges. Contrary to the King's promises, these services and facilities were not provided.

58.     King has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the Spring 2020 semester for the period it moved to online distance learning.

59.     Nor has King refunded any portion of the Mandatory Fee it collected from Plaintiff and the members of the Class for the Spring 2020 semester even though it closed or ceased operating the services and facilities for which the Mandatory Fee was intended to pay.

60.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All King undergraduate students who satisfied their payment obligations for the Spring 2020 semester tuition and/or Mandatory Fee and who were enrolled in at least one in-person on-campus class (the "Class").

62.     Specifically excluded from the Class are all undergraduate students who received full King-funded scholarships for the Spring 2020 semester, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint

ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

63.     Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definition.

64.     **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, King has reported that about 1,900 undergraduate students enrolled full-time for the 2019-2020 school year, and an additional 600 undergraduate students enrolled on a part-time basis. The names and addresses of all such students are known to King and can be identified through King's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

65.     **Commonality.** There are questions of law and fact common to the members of the Class including, without limitation:

> a.     Whether King accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person

and on-campus educational experience, as well as certain facilities and services throughout the Spring 2020 semester;

b.   Whether King breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience after March 11, 2020;

c.   Whether King breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fee pertained after mid-March 2020;

d.   Whether King was unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time the College closed during the Spring 2020 semester, and that Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access and the services and facilities for which tuition and the Mandatory Fee was paid;

e.   Whether King intentionally interfered with the rights of the Plaintiff and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services for which the Mandatory Fee was intended to pay, all

while retaining the tuition and Mandatory Fee paid by Plaintiff and the Class; and

f.      The amount of damages and other relief to be awarded to Plaintiff and the Class members.

66.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that King stopped providing in mid-March 2020 for the remainder of the Spring 2020 semester.

67.    **Adequacy of Representation.** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the other Class members who he seeks to represent, Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

68.    **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numbers common questions

that dominate this action. For example, Defendant's lability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

69.    **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class members to individually seek redress for the Colleges wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

70.    **Ascertainability.** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

## FIRST CLAIM FOR RELIEF
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

71.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

72.    Plaintiff brings this claim individually and on behalf of the members of the Class.

73.    By paying King tuition and the Mandatory Fee for the Spring 2020 semester, King agreed to, among other things, provide an in-person and on-campus educational experience as well as the services and facilities to which the Mandatory Fee Plaintiff and Class members pertained throughout the Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into a binding contract with King.

74.    When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that King would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and use King's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with King's publications, including but not limited to its marketing materials, course catalogues, and other bulletins, as well as King's history and prior course of providing in-person on-campus education.

75.    Plaintiff and Class members fully performed their obligations under their implied contracts with King by registering for classes and paying tuition and the Mandatory Fee.

76.    Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and King on the other.

77.    King breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational experience as well as the services and facilities to which the Mandatory Fee pertained throughout the Spring 2020 semester, yet has retained monies paid by Plaintiff and the Class for an on-campus and in-person educational experience and access to these services and facilities during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

78.    Plaintiff and the members of the Class have suffered damage as a direct and proximate result of King's breach in the amount of the prorated portion of the tuition and Mandatory Fee they each paid equal to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when in-person classes were discontinued and facilities were closed by King.

79.    King should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class member.

## SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

80.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiff and the Class do not have an enforceable contract with King regarding the relief requested.

82.     Plaintiff and members of the Class conferred a benefit on King in the form of tuition and the Mandatory Fee paid for the Spring 2020 semester. The payment of this tuition and Mandatory Fee was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

83.     King knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

84.     King has retained the full benefit of the tuition and Mandatory Fee payments by Plaintiff and the members of the Class for the Spring 2020 semester— without providing the benefits that Plaintiff and Class members were owed.

85.     For example, King failed to provide Plaintiff and Class members access to many on-campus facilities and services after March 11, 2023, yet King assessed

Plaintiff and Class members with tuition and fees that covered the cost of upkeep and maintenance of such facilities and services.

86.    Indeed, as a result of closing campus and moving classes online, King saved significant sums of money in the way of reduced utility costs, reduced meaning and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work student students, and otherwise.

87.    The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

88.    King's retention of all of the tuition and Mandatory Fee paid by Plaintiff and members of the Class during the period of time King was closed, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access and the services and facilities for which the Mandatory Fee were paid, is unjust and inequitable under the circumstances.

89.    Allowing King to retain the tuition and Mandatory Fees paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by King, unjustly enriched the Defendant.

90.    Accordingly, King has been unjustly enriched and should return the prorated portion of the tuition and Mandatory Fee that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the

23

remainder of the Spring 2020 semester when in-person classes were discontinued and facilities were closed by King.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)    For compensatory damages in an amount to be determined by the trier of fact;

(d)    For an order of restitution and all other forms of equitable monetary relief;

(e)    Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f)    Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)    Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: August 16, 2023

Respectfully submitted,

*/s/ Gary F. Lynch*

Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

*Counsel for Plaintiff*