## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL DANTONE, on behalf** | : | **No. 3:23cv1365** |
| **of himself and all others** | : | |
| **similarly situated,** | : | **(Judge Munley)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KING'S COLLEGE,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the court for disposition is Defendant King's College's motion to dismiss Plaintiff Michael Dantone's putative class action complaint regarding the college holding online classes during the COVID-19 pandemic.  The parties have briefed their positions and the motion is ripe for decision.

**Background**

Defendant King's College ("defendant" or "King's") is a private liberal arts college located in Wilkes-Barre, Pennsylvania.  Enrollment at the college is 1,900 undergraduate students and 600 part-time students. (Doc. 1, Compl. ¶ 17, 64). Defendant offers students the option to attend either online classes or have an on-campus, in-person educational experience.  (Id.)  Plaintiff Michael Dantone was an undergraduate student enrolled in King's on-campus, in-person education program during the spring 2020 semester.  (Id. ¶ 4).

In March 2020, in response to the outbreak of the COVID-19 pandemic, defendant transitioned to remote, online-only education and cancelled on-campus recreational events and student activity events.  (Id. ¶ 6).  Defendant further ordered students to refrain from going on campus.  (Id.)  Thus, for the remainder of the spring 2020 semester, no on-campus education, services, and amenities were available to students.  (Id. ¶ 7).

Thus, per the complaint, King's students lost the services and experience for which they had paid.  (Id. ¶ 9).  Defendant refused to provide a prorated refund of tuition and fees related to on-campus education, services, and amenities even though they were not available to students for a significant part of the spring 2020 semester.  (Id. ¶ 8).  Defendant, however, did prorate room and/or board charges for residential students for the semester.  (Id.)  According to the plaintiff, defendant breached its contracts with the students by not providing prorated refunds for tuition or fees charged for on-campus education and services.

Based upon these allegations, plaintiff filed the instant complaint, which raises the following two causes of action:  Count 1, breach of contract; and Count 2, Unjust Enrichment.  (Id. at ¶¶ 71-90).  Plaintiff seeks to bring the complaint on his behalf and on behalf of all the King's students similarly situated to him with regard to the spring 2020 semester.  (Id. ¶¶ 62-70).

2

In response to the plaintiff's complaint, the defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). The parties have filed briefs in support of their respective positions, bringing the case to its present posture.

**Jurisdiction**

The plaintiff bases this court's jurisdiction on 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005. At least one member of the class is a citizen of a different state from the state the defendant is a citizen of and there are more than 100 members of the class. Additionally, the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. (Doc. 1, Compl. ¶ 18).

**Standard of review**

As noted above, defendant has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988)

(quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level."  McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted).  The "complaint

4

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

**Discussion**

Defendant's motion to dismiss raises the following four issues:  1) Is plaintiff's complaint barred based on the educational malpractice doctrine? 2) Does the complaint properly allege a breach of an implied contract to provide in-person and on-campus educational services and access to facilities and campus? 3) Do the doctrines of frustration of purpose and/or impracticability excuse defendant's actions in moving all classes online? and 4) Has plaintiff properly pled an unjust enrichment claim? The court will address each issue in turn.

## 1. Educational Malpractice Doctrine

Defendant's first argument is that plaintiff's breach of contract and unjust enrichment claims amount to an assertion of educational malpractice, a claim which is generally not cognizable under Pennsylvania law.  In support of its position, defendant cites to Cavaliere v. Duff's Bus. Inst., 605 A.2d 397 (Pa. Super. Ct. 1992).

In Cavaliere, the Pennsylvania Superior Court addressed the issue of whether a breach of contract or tort action could be brought against an educational institution on the basis that the quality of the education received was subpar.  The court deemed such actions "educational malpractice", and "refused to recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education." Id. at 403.  The court reasoned that "[i]t would be unwise to inject the judiciary into an area where it would be called upon to make judgments despite often insurmountable difficulties both in the formulation of an adequate standard of care and in finding a causal link between the alleged breach and the alleged damages." Id. Defendant argues that plaintiff's complaint falls squarely into the doctrine of educational malpractice and is thus barred under Pennsylvania law.

6

Plaintiff, however, argues that his case is not about the quality of the education he received.  Rather, the complaint alleges that defendant promised to provide a specific type of education (in-person and on-campus), for which plaintiff paid significant sums of money by way of tuition and fees. (Doc. 1, Compl. ¶¶ 3-4, 36, 38).  Defendant then changed the type of education it provided without returning the funds paid.  (Id. ¶¶ 6-8, 39-40).  That is, the defendant closed the campus and provided only online classes.

The Third Circuit Court of Appeals has addressed this issue and rejected the argument that the defendant here advances.  See Hickey v. Univ. of Pittsburgh, 81 F.4th 301 (3d Cir. 2023).   The court stated:  "We reject the Universities' assertion that the Students' tuition claims amount to no more than educational malpractice claims.  The Students' claims are not that the education they received was inadequate, but rather that the Universities failed to provide a specific type of education – live and in person – that was essential to the bargain." Id. at 311 n.7.  Here, as noted above, plaintiff makes the same allegations.  Therefore, the defendant's argument regarding the education malpractice doctrine is unconvincing, and the portion of the motion to dismiss based on this doctrine will be denied.

## 2. Implied Contract

Count I of plaintiff's complaint asserts a cause of action for breach of implied contract.  (Doc. 1, ¶¶ 71-79).  Defendant next argues that plaintiff fails to state a proper claim for such a breach.  Defendant's argument has two parts.  First, it argues that plaintiff cannot identify a specific enforceable promise.  Second, defendant argues that any requirement to provide in-person education is excused.  The court will address each argument separately.

### a. Specific Enforceable Promise

Plaintiff's complaint contends that defendant breached its implied promise to provide an "in-person and on-campus education experience" in exchange for tuition and fees.  (Doc. 1, Compl. ¶¶ 36, 37, 73).  Plaintiff paid the tuition and fees necessary for the defendant to provide in-person on-campus education, but the defendant did not provide an in-person and on-campus education experience.  Defendant now refuses to refund the tuition and fees to the plaintiff.

Under Pennsylvania law, "[a] contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances."  Liss & Marion, P.C. v. Recordex Acquisition Corp., 983 A.2d 652, 659 (Pa. 2009) (internal quotation marks and citation omitted).  The Third Circuit has confirmed that the law of implied

8

contracts applies in the student-university context.  "Pennsylvania law has not jettisoned ordinary contract principles permitting implied contracts in cases where . . . students allege that a university failed to perform a specific undertaking." Hickey, 81 F.4th at 311-12.

Defendant argues that plaintiff fails to properly allege any promise it made that has been breached.  Plaintiff disagrees.  The alleged promise, per the complaint, was that defendant would provide "an in-person and on-campus educational experience as well as the services and facilities to which the Mandatory Fee . . . pertained throughout the Spring 2020 semester."  (Doc. 1, Compl. ¶ 73).

According to the defendant, plaintiff has not identified a single contract, handbook, policy, or document in which defendant agreed to provide exclusively in-person, on-campus education.  On the contrary, plaintiff acknowledges in his complaint the defendant offered in-person, online, and hybrid online/on-campus classes even before the pandemic.  (Id. ¶ 23).  In the absence of a promise by the defendant, the plaintiff's implied contract claim fails according to the defendant.

Plaintiff alleges that the following establish a promise on the part of the defendant to provide on-campus in-person classes:

9

Defendant's marketing materials, course catalogs, and other bulletins promoted the benefits of being on its campus. (Doc. 1, Compl. ¶¶ 29-35). For example, the defendant's website states: "Community is important at King's College because we believe your success depends upon an environment that's as nurturing as it is enriching." (Id. ¶ 32). The website further provides, "the minute you step foot on campus,  you'll feel the warm, friendly vibe; you'll notice the immaculate surroundings and impressive facilities; you'll feel at home in the comfortable urban setting.  King's College is a home away from home -a place that overflows with values for a lifetime." (Id.)

The website and course catalogue also discussed the benefits of attending a school located in Northeastern Pennsylvania, and the cultural and entertainment opportunities to be had.  (Id. ¶¶ 33-34).  Both promoted the campus's physical location.  (Id.)

The Hickey court faced similar arguments and held:  "[V]iewed in context with the Students' payment of tuition and registration for in-person classes prior to campus closures, these representations support a reasonable inference that in-person education and access to campus resources were among the benefits of the matriculation bargain." 81 F.4th at 312.  As such, these allegations support the plaintiff's implied contract theory.

Plaintiff also points out that "[s]ince its founding in 1946, Kings has offered its educational programs on-campus and in-person." (Id. ¶ 22). Additionally, nearly all of the courses listed in the course catalogue are offered exclusively at a physical location on-campus and in-person. (Id. ¶ 23). Similar allegations were found to support the implied contract theory in Hickey, therefore, the court finds that they also support plaintiff's implied contract theory here.[1]  81 F.4th at 313.

Accordingly, plaintiff has evidence from which a factfinder could find an implied contract, and dismissal of that claim is inappropriate.

As noted above, plaintiff claims he paid both tuition and mandatory fees in return for the in-person on-campus educational experience. Defendant makes a separate argument with regard to the mandatory fees. It claims that the various mandatory fees are structured as "flat fees" and are incurred regardless of whether or not students used all the services to which they might be put to use. Accordingly, defendant argues that plaintiff cannot plausibly argue that he is entitled to a prorated refund of these mandatory fees.

The complaint alleges that plaintiff paid the "Mandatory Fee" for the spring 2020 semester so as to benefit from on-campus services and facilities offered by

---

[1] The Hickey court addressed a third factor that supported the implied contract theory. This factor was that online courses at the universities in question cost less than in-person courses. Hickey, 81 F.4th at 313. This factor is not pled in the instant case. Hickey, however, did not hold that that factor must be pled to assert a proper implied contract in these circumstances. It merely addressed the cost as another factor which supports an implied contract.

defendant to its students.  (Doc. 1, Compl. ¶ 38).  When the campus was closed the Mandatory Fees were not refunded, not even on a prorated basis.  (Id. ¶ 49). Plaintiff seeks a prorated refund of the Mandatory Fees.

The Third Circuit also addressed the issue of fees in Hickey.  In that case the court noted: "the Students have adequately alleged that the services and access to campus facilities that the individual fees were intended to cover were at least partially terminated, so the Students may be owed a refund." Hickey, 81 F.4th at 315.  Likewise, here, while further discovery may be needed to determine the scope of the fees, what they covered, when the services were terminated, and for how long, see, id., the students paid a fee or fees that was intended to cover the whole semester.  The semester, however, was cut short. Therefore, they may be entitled to a refund of a portion of the fee or fees paid.

Based on the above reasoning, the plaintiff has sufficiently pled an implied contract regarding the payment of tuition and mandatory fees.  Defendant's motion will be denied with regard to these issue.

### b.  Any Requirement to Provide In-Person Education is Excused

Defendant next argues that even if it did have a duty to provide in-person education based upon an implied contract, its duty to fulfill that obligation was excused by executive orders to shut down the campus due to the health risks posed by the pandemic.

The law provides that a party's performance of a contract may be excused by impracticability of performance or frustration of purposes.  Step Plan Servs. v. Koresko, 12 A.3d 401, 411-13 (Pa. Super. Ct. 2010).  Here, defendant argues that in response to the COVID-19 pandemic, the Governor of Pennsylvania, Tom Wolf, declared a state of emergency.  He ordered all non-essential businesses to close, including colleges, thus preventing colleges from providing in-person instruction.  Per defendant, it did the best it could by providing on-line classes, and thus any breach of an implied contract on its part was not material.

The law provides, however, that the application of the impracticability defense is best left until after discovery.  See Nouri v. Univ. of Scranton, 3:23cv1362, 2024 WL 3871804, at * 7 (M.D. Pa. Aug. 19, 2024) (explaining in a similar case that discovery is needed to clarify the extent to which the law barred defendant from performing its alleged contractual obligations).  Moreover, the impracticability defense does not allow the breaching party to keep the benefit conferred upon it by the other party, it at most only excuses performance of a contract.  Id.  In other words, even if the breach is excused, defendant may have to pay damages regardless.  Accordingly, at this point in the litigation, the court rejects defendant's argument.

13

## 2. Unjust Enrichment

Count II of plaintiff's complaint asserts a cause of action for unjust enrichment.  (Doc. 1, Compl. ¶¶ 80-90).  Defendant seeks dismissal of this claim.

Under Pennsylvania law, the elements for unjust enrichment are:

1) the plaintiff conferred a benefit on the defendant; 2) the defendant appreciated the benefit; and 3) the defendant retained the benefit under circumstances where it would be inequitable to do so without payment of value. Hickey, 81 F.4th at 316 (citing WFIC, LLC v. LaBarre, 148 A.3d 812, 819 (Pa. Super. Ct. 2016)).

Here, plaintiff has adequately alleged an unjust enrichment claim. He claims that he conferred a benefit on the defendant, that is, he paid tuition and fees.  The defendant received the benefit but retained it even though it did not provide the benefit plaintiff was owed, specifically in-person on-campus education.  (Doc. 1, Compl. ¶¶ 80-90).

Defendant argues, however, that the plaintiff cannot recover for unjust enrichment because under Pennsylvania law a party cannot recover for unjust enrichment if an existing contract governed the parties' relationship.  Here, plaintiff alleges in Count 1 that a contract governed the relationship between the parties and, therefore, according to the defendant, plaintiff cannot allege an unjust enrichment claim in Count 2.

14

This argument was addressed by the <u>Hickey</u> court which noted that Pennsylvania law does indeed bar unjust enrichment claims where the parties relationship is governed by either an express or implied contract. <u>Hickey</u>, 81 F.4th at 315 (citing <u>Hershey Foods Corp. v. Ralph Chapek, Inc.</u>, 828 F.2d 989, 999 (3d Cir. 1997)). The Federal Rules of Civil Procedure, however, allow an unjust enrichment claim to be pled in the alternative where the existence or applicability of a contract is disputed. <u>Id.</u> at 315-16; <u>see</u> Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Thus, the <u>Hickey</u> court permitted the unjust enrichment claim to proceed. For the same reasons, the court here will deny the defendant's motion with regard to the unjust enrichment claim. Plaintiff is allowed to assert the unjust enrichment claim in the alternative to the breach of contract claim because defendant disputes the contract claim.

**Conclusion**

For the reasons set forth above, the defendant's motion to dismiss will be denied. Plaintiff has properly pled causes of action for breach of contract and unjust enrichment. An appropriate order follows.

Date: _8/29/24_

JUDGE JULIA K. MUNLEY
United States District Court

16